# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANGEL FERNANDEZ,

    Petitioner,

v.

WARDEN CRAIG A. LOWE,

    Respondent.

NO. 3:17-CV-2301

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) filed by Petitioner Angel Fernandez ("Petitioner"). For the reasons that follow, the petition will be denied without prejudice.

## I. Background

Petitioner is a citizen and national of the Dominican Republic. (*See* Doc. 4, Ex. "1", 2-3). Petitioner entered the United States on August 5, 1994 as a non-immigrant visitor, class P-1. (*See id*. at 3). On June 12, 1996, Petitioner adjusted his status to lawful permanent resident on a conditional basis CR-6 based on a petition filed by his wife who was a United States citizen. (*See id*.). At some point thereafter, Petitioner left the United States, but he was paroled back into the United States on September 3, 2001 pending determination of his right to reenter. (*See id*.). The conditions of his residence were removed on January 3, 2003. (*See id*.).

Petitioner was subsequently encountered by immigration officials pursuant to the criminal alien program while he was incarcerated for his June 21, 2016 conviction in the United States District Court for the District of New Jersey for the offense of conspiracy to commit theft of government property. (*See id*. at 2).

On or about January 18, 2017, immigration officials charged Petitioner with being removable from the United States pursuant to §§ 237(a)(2)(A)(ii) and 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") based upon two

convictions for crimes involving moral turpitude and having been convicted of an aggravated felony. (*See id*.). According to Petitioner, he was taken into custody by immigration officials on April 9, 2017. (*See* Doc. 1, 2).

On December 4, 2017, the Immigration Judge denied a waiver under § 601, an application by Petitioner for cancellation of removal under § 212(h), and an application for adjustment of status under § 245 and ordered him removed from the United States. (*See* Doc. 4, Ex. "3"). On January 2, 2018, Petitioner filed a notice of appeal to the Board of Immigration Appeals ("BIA"). (*See* Doc. 1, 1-3; Doc. 4, 3). Petitioner's appeal was dismissed on May 5, 2018.

Petitioner has since filed an appeal with the United States Court of Appeals for the Third Circuit. *See Fernandez v. Att'y Gen.*, No. 18-2136. On May 31, 2018, the Third Circuit, pursuant to a standing order, temporarily granted Petitioner a stay of removal until such time as it can consider his motion for a stay of removal. *See id*. That motion was fully briefed as of June 18, 2018. *See id*.

On December 13, 2017, Petitioner filed for relief pursuant to 28 U.S.C. § 2241. (*See* Doc. 1, *generally*). Specifically, Petitioner contends that his continued detention is unconstitutional and that he should either be released or an individualized bond hearing should be ordered. (*See* Doc. 1, *generally*). The Government disputes that Petitioner is entitled to relief. (*See* Doc. 4, *generally*). The § 2241 petition is now ripe for disposition.

## II. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's

2

jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500, 93 S. Ct. 1123, 35 L. Ed. 2d 443 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

### III. Discussion

Based on Petitioner's two convictions for crimes involving moral turpitude and his conviction for an aggravated felony, he is in mandatory detention in accordance with 8 U.S.C. § 1226(c).[1] That section provides:

> **(1) Custody**
>
> The Attorney General shall take into custody any alien who . . .
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title, . . .
>
> **(2) Release**
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary [for witness protection purposes], and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled hearing.

8 U.S.C. § 1226(c). Section 1227(a)(2)(A)(ii) pertains to any alien who after admission is convicted of "two or more crimes involving moral turpitude," while § 1227(a)(2)(A)(iii) applies to any alien convicted of an aggravated felony. *Id.* at §§ 1227(a)(2)(A)(ii)-(iii).

"Notably, section 1226(c) does not give the Attorney General any authority to release these aliens on bond." *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d

---

[1] Petitioner remains detained under § 1226 and not § 1231 pursuant to the Third Circuit's decision in *Leslie v. Att'y Gen.*, 678 F.3d 265, 268-70 (3d Cir. 2014) ("every circuit to consider the issue has held that § 1226, not § 1231, governs detention during a stay of removal.").

3

469, 473 (3d Cir. 2015) (citing *Demore v. Kim*, 538 U.S. 510, 521, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003)). In *Chavez-Alvarez*, the Third Circuit recognized that while the Supreme Court in *Demore* "left no doubt that the Government's authority under section 1226(c) to detain aliens without an opportunity for bond complies with the Constitution," it "read *Demore* as also recognizing that there are limits to this power." *Id*. This followed the Third Circuit's decision in *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232, 234 (3d Cir. 2011), where it reasoned that "the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [certain] thresholds." Specifically, the *Diop* court held that § 1226(c) "implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." *Id*. at 231.

Earlier this year, though, the Supreme Court explicitly rejected the practice of reading an implicit time limit into § 1226(c). *See Jennings v. Rodriguez*, - - - U.S. - - -, 138 S. Ct. 830, 846-47, 200 L. Ed. 2d 122 (2018). The *Jennings* Court explained:

> [Section] 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting - but not requiring - the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General to release those aliens on bond, "[e]xcept as provided in subsection (c) of this section." Section 1226(c) in turn states that the Attorney General "shall take into custody any alien" who falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c) then goes on to specify that the Attorney General "may release" one of those aliens "only if the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk. § 1226(c)(2) (emphasis added).
>
> [Section] 1226(c) does not on its face limit the length of the detention it authorizes. In fact, by allowing aliens to be released "only if" the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly

4

recognized by the statute. And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue "pending a decision on whether the alien is to be removed from the United States." § 1226(a).

In a reprise of their interpretation of § 1225(b), respondents argue, and the Court of Appeals held, that § 1226(c) should be interpreted to include an implicit 6–month time limit on the length of mandatory detention. Once again, that interpretation falls far short of a "plausible statutory construction."

In defense of their statutory reading, respondents first argue that § 1226(c)'s "silence" as to the length of detention "cannot be construed to authorize prolonged mandatory detention, because Congress must use 'clearer terms' to authorize 'long-term detention.'" Brief for Respondents 34 (quoting *Zadvydas*, 533 U.S., at 697, 121 S. Ct. 2491). But § 1226(c) is not "silent" as to the length of detention. It mandates detention "pending a decision on whether the alien is to be removed from the United States," § 1226(a), and it expressly prohibits release from that detention except for narrow, witness-protection purposes. Even if courts were permitted to fashion 6-month time limits out of statutory silence, they certainly may not transmute existing statutory language into its polar opposite. The constitutional-avoidance canon does not countenance such textual alchemy.

Indeed, we have held as much in connection with § 1226(c) itself. In *Demore v. Kim*, 538 U.S., at 529, 123 S. Ct. 1708 we distinguished § 1226(c) from the statutory provision in *Zadvydas* by pointing out that detention under § 1226(c) has "a definite termination point": the conclusion of removal proceedings. As we made clear there, that "definite termination point" - and not some arbitrary time limit devised by courts - marks the end of the Government's detention authority under § 1226(c).

Respondents next contend that § 1226(c)'s limited authorization for release for witness-protection purposes does not imply that other forms of release are forbidden, but this argument defies the statutory text. By expressly stating that the covered aliens may be released "only if" certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative prohibition on releasing detained aliens under any other conditions.

. . .

We hold that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings "only if" the alien is released for witness-protection purposes.

5

*Id*.

Given this holding, and as I explained in *Coello-Udiel v. Doll*, No. 17-1414, 2018 WL 2198720, at *3 (M.D. Pa. May 14, 2018), to the extent that Petitioner argues he is statutorily entitled to a periodic bond hearing under *Chavez-Alvarez* and *Diop*, he is not because those cases have been abrogated in that they "relied on the doctrine of constitutional avoidance to read a reasonable time limitation into the statute." *See also Carlos A. v. Green*, No. 18-741, 2018 WL 3492150, at *4 (D.N.J. July 20, 2018) (Wigenton, J.); *Frantz C. v. Shanahan*, No. 18-2043, 2018 WL 3302998, at *2-3 (D.N.J. July 5, 2018) (Linares, J.).

*Jennings*, however, did not reach the merits of the constitutional challenge before it. *See Jennings*, 138 S. Ct. at 851 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits. . . . [W]e remand the case to the Court of Appeals to consider them in the first instance."). But, in *Denmore* the Supreme Court found that "§ 1226(c) is constitutional on its face because . . . it does not allow for indefinite detention and the detentions it requires are frequently short in duration." *Coello-Udiel*, 2018 WL 2198720, at *3 (citing *Denmore*, 538 U.S. at 531, 123 S. Ct. 1708). The *Denmore* Court, though, "partially based its decision on the short, fixed and finite term of any detention prior to removal." *Id*. (citing *Denmore*, 538 U.S. at 529-30, 123 S. Ct. 1708). As a result, "it is unclear under current Supreme Court precedent at what point a detention pursuant to § 1226(c) becomes unreasonable without a hearing, making continued detention unconstitutional in a particular case." *Id*.; *see also Carlos A.*, 2018 WL 3492150, at *4 (because § 1226(c) "contains no implicit time limits, and having previously determined in *Denmore* that § 1226(c) is facially constitutional, the Supreme Court observed that the only challenge to detention under § 1226(c) which remains viable after *Jennings* is an individual petitioner's challenge to the constitutionality of the statute as applied to him." ); *accord Sajous v. Decker*, No. 18-

2447, 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018) ("the Court concludes that whether mandatory detention under § 1226(c) has become 'unreasonable,' . . . and thus a due process violation, must be decided using an as-applied, fact-based analysis.").

Recently, the United States District Court for the District of New Jersey addressed an as applied challenge by a § 1226(c) detainee. *See Carlos A.*, 2018 WL 3492150, at *4. In so doing, the court explained :

> Although the Third Circuit's ultimate rulings in *Diop* and *Chavez-Alvarez* have been abrogated by *Jennings*, and those two cases are no longer binding upon this Court, it does not follow that those two cases should be ignored. The constitutional reasoning that underlay the Third Circuit's invocation of the constitutional avoidance canon still provides some persuasive guidance to how this Court should address § 1226(c) claims. Specifically, the Court accepts that the "constitutionality of [detention pursuant to § 1226(c) without a bond hearing] is a function of the length of the detention [and t]he constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [certain] thresholds." *Chavez-Alvarez*, 783 F.3d at 474 (quoting *Diop*, 656 F.3d at 232, 234). This Court likewise is mindful that "any determination on reasonableness [must be] highly fact specific" and that "at a certain point - which may differ case by case[ ] - the burden to an alien's liberty outweighs" the Government's interest in detention without bond," *id.* at 474-75, and that detention which is so unreasonable as to amount to an arbitrary deprivation of liberty cannot comport with the requirements of the Due Process Clause. *Id.* at 474; *see also Demore*, 538 U.S. at 432 (Kennedy, J., concurring). Because, however, *Jennings* foreclosed the constitutional avoidance basis provided by the Third Circuit in its determination that detention will normally become suspect between six months and a year, and because *Jennings* leaves open only the question of whether § 1226(c) is unconstitutional as applied to the petitioner, it is insufficient that Petitioner's detention has merely become suspect by reaching this six month to a year threshold, in order for Petitioner to be entitled to release he must show that his ongoing detention is so unreasonable or arbitrary that it has actually violated his rights under the Due Process Clause. If Petitioner's detention has not become so unreasonable or arbitrary that continued application of the statute is unconstitutional as applied to Petitioner, § 1226(c) authorizes his continued detention until a final order of removal is entered and Petitioner would not be entitled to relief. *Jennings*, 138 S. Ct. at 846-47.

*Id.*

Here, the record is devoid of any evidence that the Government has improperly or unreasonably delayed the regular course of proceedings, or that the Government has detained Petitioner for any purpose other that the resolution of his removal proceedings. *See Coello-Udiel*, 2018 WL 2198720, at *4. While Petitioner has been detained as part of his removal proceedings for approximately fifteen (15) months, it is insufficient for Petitioner to merely point to the fact that his detention has become suspect by reaching the year mark. *See Carlos A.*, 2018 WL 3492150, at *4. Instead, he must show that his continued detention has become so arbitrary or unreasonable that his continued detention is unconstitutional. Petitioner has not done so.[2]

First, Petitioner's case has proceeded at a reasonable pace. Notably, his appeal was dismissed by the BIA in just over four (4) months. *See id*. at *5 ("the immigration courts swiftly decided Petitioner's case . . . indeed, the immigration judge held a hearing and decided Petitioner's removability issue on the very same day that Petitioner's hearing was held, and the BIA decided his appeal in short order."). And, Petitioner's motion for a stay of removal has already been fully briefed before the Third Circuit. Second, for the same reasons I found applicable in *Coello-Udiel*, "the justifications for detention under § 1226(c) continue to be served, perhaps more than ever now that an order of removal has been entered, since an alien who has already been ordered removed has less to lose by fleeing while released on bond. Having been ordered removed, the only reason [Petitioner] is still detained under § 1226(c) is his appeal of the order of removal." *See Coello-Udiel*, 2018 WL 2198720, at *4. While Petitioner "certainly has the right to pursue all available avenues to combat his removal, post-*Jennings*, he does not have the right to parlay the resulting delay into a bond hearing." *Id*.

---

[2] In his petition, Petitioner did not argue that § 1226(c) was unconstitutional as applied to him. Rather, he contended that the failure to provide him with a bond hearing violated *Chavez-Alvarez*. This makes sense given that *Jennings* was not decided until after the instant petition was filed.

8

### IV. Conclusion

For the above stated reasons, the § 2241 petition will be denied without prejudice to Petitioner filing another petition if his detention becomes arbitrary or unreasonable.

An appropriate order follows.

July 26, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge